DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Hilda Cole, ("Grandmother") appeals from a judgment of the Summit County Court of Common Pleas that denied her motion for legal custody of her granddaughter and instead placed the child in the legal custody of the child's father, L.C. ("Father"). We affirm.
 {¶ 2} Father is the natural father of A.C., born December 24, 1994. A.C.'s mother died of cancer in August of 2002. After her mother's death, Father left A.C. with Grandmother, her maternal grandmother, while he worked to get his life back together. Father visited A.C. and took her on a few vacations, but she lived primarily with Grandmother for the next two years. A.C.'s maternal aunt, who lived nearby, helped Grandmother provide care for A.C. During the fall and winter of 2004, Father informed Grandmother that he was ready to have A.C. return to his home on a fulltime basis.
 {¶ 3} On January 10, 2005, Grandmother filed a motion for legal custody in the juvenile court. She alleged, among other things, that Father had maintained little contact with A.C., that she did not know how to contact him in the event of an emergency, and that he had committed inappropriate physical and/or sexual behavior with A.C. Based on similar allegations, Grandmother also moved for, and was granted, emergency temporary custody of A.C.
 {¶ 4} Grandmother had also contacted Summit County Children Services Board ("CSB") with her allegations that Father had physically and/or sexually abused A.C. The allegations stemmed from a single incident that occurred while A.C. was vacationing with Father in another state. Father had helped to wash A.C., then nine years old, because she still had visible soap scum on her body after she bathed. CSB investigated the incident and found the allegations of abuse to be unsubstantiated and no further action was taken by the agency.
 {¶ 5} Following a hearing before a magistrate, the magistrate found that Father was an unsuitable parent and that legal custody to Grandmother was in the best interest of A.C. Consequently, the magistrate decided that Grandmother should be awarded legal custody and Father should be granted visitation rights. Father filed timely objections to the magistrate's decision, asserting among other things that the magistrate's finding that he was an unsuitable parent was against the manifest weight of the evidence.
 {¶ 6} Upon consideration of Father's objections and a review of all the evidence before the magistrate, the trial court agreed that the magistrate's finding that Father was an unsuitable parent was not supported by the evidence presented. The trial court sustained Father's objection and awarded him legal custody of A.C. Grandmother was granted visitation pursuant to a standard order.
 {¶ 7} Grandmother appeals and raises four assignments of error, two of which will be consolidated for ease of review.
 ASSIGNMENT OF ERROR I
"In the judgment entry of February 28, 2006, the court improperly determined that Father is a suitable parent."
 ASSIGNMENT OF ERROR II
"The trial court's judgment entry was against the manifest weight of the evidence and contrary to law; the decision of the magistrate was supported by competent, credible evidence."
 {¶ 8} Grandmother's first two assignments of error will be addressed together because they are closely related. Initially, we must note that, although Grandmother contends that the trial court erroneously found that Father was a suitable father, the trial court made no such finding. The trial court found that Grandmother had failed to meet her burden, by a preponderance of the evidence, to establish that father was an unsuitable
parent. Father had no burden to prove his suitability as a parent, nor was the trial court required to make such a finding.
 {¶ 9} The parties do not dispute that this was a custody action between a nonparent and a presumptively-fit parent and that the trial court was required to apply the legal standard set forth in In re Perales (1977), 52 Ohio St.2d 89,369 N.E.2d 1047, syllabus. Because this case did not involve a prior adjudication of dependency, neglect, or abuse, the trial court could not award custody to Grandmother unless it first found, by a preponderance of the evidence that Father was unsuitable. Id.; compare In re C.R., 108 Ohio St.3d 369, 2006-Ohio-1191, at ¶ 8
(holding that following an adjudication of abuse, neglect, or dependency, the juvenile court need not find a parent unsuitable before awarding legal custody to a nonparent).
 {¶ 10} The Perales court emphasized the natural right of a parent to raise his own child and the societal presumption that a "fit" parent is the better custodian for a child than a nonparent. Consequently, a nonparent will not be considered as a custodian unless the court first finds the parent to be unsuitable. To find a parent "unsuitable," the trial court must find one of the following: that "the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." Perales, 52 Ohio St.2d at syllabus. The Perales court further emphasized that "unsuitability" is not "only some moral or character weakness," id. at 99, but must be established by reference to "the harmful effect of the custody on the child, rather than in terms of society's judgment of the parent[.]" Id. at 98.
 {¶ 11} Although the magistrate found that Father was "unsuitable," he failed to make specific reference to thePerales unsuitability requirements. Instead, the magistrate made many references to Father's shortcomings, focusing on his character weaknesses rather than on any harmful impact that custody would have on A.C. The magistrate also focused on evidence that tended to establish that Grandmother was the better caregiver. None of that evidence established Father's unsuitability under the standard set forth in Perales, however. Upon consideration of Father's objections, the trial court reviewed the evidence in reference to each of the Perales
"unsuitability" requirements, and concluded that Grandmother had failed to establish any of them.
 {¶ 12} We have reviewed all of the evidence presented and agree with the trial court that Grandmother failed to establish that Father abandoned A.C., that Father contractually relinquished his parental rights, that Father was totally incapable of supporting or caring for A.C., or that an award of custody would be detrimental to A.C. Not only did Grandmother fail to meet her burden of establishing any of these requirements by a preponderance of the evidence, there was almost no evidence relevant to any these requirements.
 {¶ 13} The evidence presented at the hearing, and upon which Grandmother insists Father's parental unsuitability was established, focused primarily on the fact that Grandmother had been more involved in A.C.'s day-to-day life than Father had for the past two years. A.C. had been living with Grandmother; Grandmother and A.C.'s aunt had taken A.C. to and from school, had helped her with her homework most days, and they were the ones who attended most of her school and church functions. A substantial amount of the hearing was devoted to evidence concerning who signed A.C.'s school agenda book, who paid for what, and whether Father supported A.C.'s extracurricular activities. Several witnesses, including the guardian ad litem, opined that Grandmother was more involved in A.C.'s life and that, essentially, she was the preferred caregiver. All of that evidence might have been relevant to what was in the best interest of A.C, but the trial court had no reason to make a best interest determination unless and until Father's parental unsuitability was established. The fact that Grandmother may have been a better parent to A.C. than Father during the prior two years did not mean that Father was unsuitable.
 {¶ 14} The only allegation of Father's unsuitability involved the single incident in which Father rewashed A.C. after she had bathed and still had visible soap scum on her body. This isolated incident was mentioned repeatedly throughout the hearing. Although Grandmother and others had concluded that Father acted inappropriately by washing a nine-year-old, CSB did not. CSB investigated the incident and found that, although Father may have become impatient with A.C. and removed her shirt to wash her body, there had been nothing sexual or abusive about the incident. CSB found the allegation of abuse to be unsubstantiated and did not pursue the case further.
 {¶ 15} Both the CSB caseworker and one of A.C.'s counselors suggested that Grandmother had overreacted to the incident and was trying to drive a wedge between A.C. and Father. The evidence further demonstrated that there were never any other allegations of inappropriate behavior by Father and that this single allegation was not made until after Father informed Grandmother that he wanted A.C. to return to his home.
 {¶ 16} According to the CSB caseworker, nothing prevented Father from caring for A.C. and she opined that A.C. should be with her father. Father's counselor also testified that she had discovered nothing in her treatment of Father to suggest that he was an unsuitable parent. The guardian ad litem also testified that there was nothing to prevent Father from having custody of A.C., if the court found it to be in the best interest of A.C.[1] Father had been employed with the same employer for decades; he had medical, dental, and vision insurance coverage for A.C. and adequate financial means to support her; he lived in a suitable four-bedroom home; and he had no criminal background. Father had paid A.C.'s private school tuition since she started at the school in kindergarten and he provided for her financially even while she lived with Grandmother.
 {¶ 17} Because the trial court correctly concluded that Grandmother failed to prove that Father was an unsuitable parent under any of the criteria set forth in Perales, the first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III
"The trial court erred in not ordering counseling for [A.C.] and [Father] and parenting classes for Father."
 {¶ 18} Through her third assignment of error, Grandmother contends that the trial court erred in failing to order Father to take parenting classes and/or to order him to undergo counseling with A.C. Father responds to this assigned error by pointing to evidence that he was already doing these things; thus, he asserts that no such court order was necessary.
 {¶ 19} Grandmother has failed to cite any legal authority to support her position that the trial court abused its discretion by failing to order Father to participate in either counseling or parenting classes. Moreover, Grandmother has failed to argue or cite supporting legal authority to explain how she, who is no longer the legal custodian of A.C., has standing to raise such an argument. This Court is not inclined to make a legal argument on Grandmother's behalf. The third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV
"The trial court erred in granting the court's standard order of visitation for [Grandmother]."
 {¶ 20} Finally, Grandmother asserts that the trial court erred in failing to allow her more extensive visitation than that its standard visitation order. Again, Grandmother has failed to cite any legal authority to support her assigned error. Although Grandmother could have made a legal argument pursuant to R.C.2151.23 and R.C. 3109.051(C), she did not. It is not the obligation of this Court to develop legal arguments that the appellant could have raised. See Kremer v. Cox (1996),114 Ohio App.3d 41, 60, 682 N.E.2d 1006. Rather, this Court addresses the arguments properly presented by the parties. Because Grandmother made no legal argument under this assigned error, we have nothing to address. The fourth assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Whitmore, J. Baird, J. Concur.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] As stressed above, however, the trial court would not evaluate A.C.'s best interest unless it was established that Father was unsuitable.