[Cite as *State v. Mason*, 2015-Ohio-2895.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

STATE OF OHIO,                        :         **O P I N I O N**

        Plaintiff-Appellee,         :

    - vs -                                :         **CASE NO. 2014-L-058**

PATRICK S. MASON, JR.,           :

        Defendant-Appellant.       :


Criminal Appeal from the Lake County Court of Common Pleas, Case No. 13 CR 000579.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer*, Lake County Public Defender, and *Vanessa R. Clapp*, Assistant Public Defender, 125 East Erie Street, Painesville, OH  44077 (For Defendant-Appellant).


THOMAS R. WRIGHT, J.

{¶1}    Appellant, Patrick S. Mason, Jr. was convicted of complicity to burglary, a felony of the third degree, in violation of R.C. 2923.03(A)(2) and 2911.12(A)(2). On appeal, Mason argues that his conviction is against the manifest weight of the evidence, that the trial court admitted irrelevant and unfairly prejudicial evidence, and

that the trial court erred in giving a flight instruction. For the following reasons, we affirm.

{¶2}   On July 24, 2013, Thomas Koziol opened his garage door and took out his lawn mower leaving his garage door open.  After mowing his backyard, Koziol returned to the garage and noticed that a family acquaintance, Daniel Carpenter, was there with Koziol's bicycle.  Carpenter explained that he was returning the bicycle because someone had taken it from Koziol's garage.  Koziol, however, never gave permission for anyone to enter his garage or to take his bicycle.

{¶3}   Carpenter testified that he was in the area because he was en route to pick someone up from work.  As he neared Koziol's home, he saw two people:  one was near Koziol's garage and another was standing on the opposite side of the street.  Both were wearing a hoodie and a backpack.  The person near the garage was wearing a red hoodie. The person across the street, later identified as Mason, was "swinging his head back and forth [and] looking side to side."  Eventually, Carpenter saw the individual near the house enter the garage and leave with the bicycle.  Carpenter pulled up next to the person with the bicycle and started to yell at him.  The person abandoned the bicycle and "took off."  Carpenter testified that Mason started to walk away from him and appeared to yell something to the fleeing person; however, he could not remember what Mason said.

{¶4}   On cross-examination, Carpenter revealed that Mason walked away and did not run.  He also acknowledged that he made no mention of a lookout in his statement to the police.  On re-direct, Carpenter clarified that he did not write down every detail in his police statement and that his testimony came from memory.  On re-

2

cross, Carpenter conceded that the police did not tell him to write down parts of what he observed.

{¶5} Chris Weber, a patrolman for the City of Eastlake, was dispatched to locate the two suspects. Dispatch described them both as black with one wearing a gray shirt and backpack and the other wearing a red shirt and backpack.

{¶6} As Weber was driving around the area, he saw a person with a "gray bundle" under his arm and wearing a backpack. Weber stopped his car and the person approached Weber. Weber asked for the individual's ID. The individual, according to Weber, did not produce identification; however he claimed that he was Patrick Mason, Jr. and provided Weber with his social security number. Upon inquiry, Mason denied coming from a house and being with anyone.

{¶7} Eventually, Lieutenant Robert Gonzalez arrived as backup and Weber detained Mason. Weber then read Mason his *Miranda* rights and Gonzalez proceeded to ask Mason questions. Specifically, Gonzalez asked Mason how he got to Eastlake when his ID indicated that he lived in Oakwood Village. According to Gonzalez, Mason replied that he came with a contractor, who was his boss, but he did not know his boss's name. Mason said that he worked for a landscaping company, but he did not know its name, and he claimed he was handing out business cards, but could not produce any cards. When Mason was asked about a burglary, Mason denied being with anyone or being involved with anything to do with a house. Finally, when Gonzalez informed Mason that his brother Donte had been apprehended, Mason responded that he never told police he was not alone and contradicted his earlier statement. After Mason was placed in Weber's car, Weber drove back to Koziol's

3

residence where, according to Weber, Koziol identified Mason as an individual involved with the burglary.

{¶8} Donte and Mason were both taken to the police station, and Weber booked Donte. He found vice grips, a screwdriver, and business cards in Donte's backpack. No business cards were in Mason's backpack.

{¶9} On cross-examination, Weber claimed an exhibit purporting to be the business cards found in Donte's backpack were similar to, but not likely the same cards found in the backpack on the date in question. Weber also admitted it was possible that Mason ran out of business cards. Weber could not recall if Mason was sweating when he apprehended him; however, Gonzalez testified that Mason was "somewhat sweating" but did not appear nervous.

{¶10} The state ended its case-in-chief with the testimony of Renee and Robin Marshall, two 16-year-old twins who live next door to Koziol. They testified that on the morning of July 23, 2013, they were outside jumping on the trampoline. At some point, their dog ran to the fence near the street and began barking. The twins stopped jumping on the trampoline, brought the dog inside the house and looked out the window facing the street to see why it was barking. Both saw two black men, each wearing a backpack, on the sidewalk looking between their house and Koziol's house. Both girls testified that one of the men crossed the street while the other man stayed near Koziol's garage. Robin explained that the man across the street was looking to his left and his right. Renee then went up to her parents' room to get a better look at the men. However, she primarily focused on the one near the garage and stopped looking when that person got closer to the garage.

{¶11} On cross-examination, both girls testified that they did not hear the two men speak to one another and could not identify either man. Robin could not recall if the man across the street was wearing headphones or talking on a cell phone.

{¶12} On re-direct, Robin testified that the man across the street was pacing side to side and was not moving in a "rhythmic fashion." On re-cross, Robin acknowledged that they could have been lost.

{¶13} Mason called two witnesses in his defense. The first witness was Janet Sekelsky, Koziol's next-door neighbor. She testified that she saw the men for less than a minute as she was leaving her house. One man was located near Koziol's house while the other was on the opposite side of the street. She did not hear any conversation between the men and testified that the man across the street was "just standing there."

{¶14} Donte Mason, Mason's brother, also testified for the defense. He testified that he and his brother were initially trying to catch a bus to Bedford Heights; however, midway through their walk, they changed their minds and headed back to a store where Donte was living at the time. On the way back, Donte saw the bicycle in Koziol's open garage and took it. Shortly thereafter, he was confronted by a man in a car and he dropped the bicycle and ran off. The police apprehended Donte and took him to jail. Donte testified that the tools were for his landscaping business, which he accidentally left in his backpack.

{¶15} On cross-examination, Donte testified that he was trying to take a bus because his car was inoperable, and that the name of the store was Contractor's Homeowners Store. Donte testified that James Smith owned the store, but he claimed

5

that he did not tell the police about Smith because the police did not ask. Donte also did not remember telling the police that came from a friend's house. He also denied telling the police that he was alone. Instead, when the police asked him where his "buddy" was located, Donte replied that the individual was not his buddy, but his brother. When the police asked Donte where the bicycle was located, Donte explained that he did not own one.

{¶16} On re-cross, Donte testified that he ran across the street without telling Mason he was going to steal the bicycle.

{¶17} As his first assignment of error, Mason alleges:

{¶18} "The trial court erred when it instructed the jury on flight in violation of the defendant-appellant's right to due process and (a) fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 10 and 16, Article I of the Ohio Constitution."

{¶19} Mason argues that there was insufficient evidence to warrant a flight instruction.

{¶20} "The decision to issue a flight instruction rests within the trial court's sound exercise of discretion and will not be reversed absent an abuse of discretion." *State v. Davilla*, 9th Dist. Lorain No. 03CA008413, 2004 Ohio 4448, at ¶12, citing *State v. Sims,* 13 Ohio App.3d 287, 289, 469 N.E.2d 554 (1984). The Second Appellate District also recently adopted a similar definition of the abuse-of-discretion standard: an abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004). When an appellate court is reviewing

6

a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error[.]  * * *  By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error."  *Id.* at ¶67.

**{¶21}** "[I]t is also well established that the flight of an accused from justice is admissible as evidence of the consciousness of guilt. *** 'It is to-day [sic] universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.'"  *State v. Cline*, 11th Dist. Trumbull No. 2007-T-0052, 2008-Ohio-1500, at ¶60 (Citations omitted) (Emphasis omitted).  It is reserved for the jury to determine "how much weight should be given to such evidence."  *United States v. Dillon*, 870 F.2d 1125, 1126 (C.A.6, 1989) (Citation omitted).  "[A] jury instruction on flight is appropriate if there is sufficient evidence in the record to support the charge." (Citation omitted.)  *Davilla*, 2004-Ohio-4448, at ¶12.

**{¶22}** Mason directs our attention to *State v. Norwood*, 11th Dist. Lake Nos. 96-L-089 and 96-L-090, 1997 Ohio App. LEXIS 4420, *14 (September 30, 1997) where this court found it was error to give a flight instruction when a defendant left a scene, but did not leave the area where "he would normally be located."  Although *Norwood* did not explain how to determine the scope of the area where a defendant would be normally located, *Norwood* deemed the defendant's continued presence with the victim in a building near the apartment complex where the crime took place as factors indicating that the defendant did not flee.  Here, there are no factors indicating Mason

7

was where the defendant would normally be found. Rather, the police confirmed that Mason was found as a result of their canvassing the area near where the crime occurred.

{¶23} The first assignment of error is without merit.

{¶24} As his second assignment of error, Mason alleges:

{¶25} "The defendant-appellant was deprived of his constitutional rights to [a] fair trial and due process when the trial court admitted irrelevant and misleading evidence regarding tools found in the backpack of his co-defendant."

{¶26} Mason alleges that testimony about the vice grips and screwdriver should have been excluded because they were irrelevant and unfairly prejudicial, misleading, and confusing to the jury. Specifically, he argues that evidence regarding the tools was irrelevant to establishing an element of burglary because it was undisputed that the door to the garage was open at the time of the theft. Mason further claims he was unfairly prejudiced by this evidence because Stephen Tryon, a patrolman with the Eastlake Police Department, testified that these tools were commonly used to break into garages, houses, and cars. He also stated that police generally refer to them as criminal tools.

{¶27} The state responds that the tools were necessary to rebut Donte's testimony that the tools were used in his landscaping business. Furthermore, the state claims that the tools are evidence that the Mason brothers were in the area with the intent to commit a theft offense. In the alternative, the state claims that if the admission of the tools and testimony concerning the tools was erroneous, the error was harmless. The state, however, provides no rationale for why the error is harmless.

8

{¶28} The admission or exclusion of relevant evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions without an abuse of discretion that has created material prejudice. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶43, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An "abuse of discretion" is a term of art, connoting judgment exercised by a court, which does not comport with reason or the record. *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). Unless otherwise prohibited, evidence is relevant and consequently admissible only if it tends to make a consequential fact more or less probable. Evid.R. 401 and Evid.R. 402. A trial court, however, must exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403; *Tate*, 11th Dist. Lake No. 2010-L-145, 2011-Ohio-6848, ¶44.

{¶29} The state's primary argument, namely, that the evidence was necessary to rebut Donte's testimony is meritless. Testimony involving the tools was proffered and the tools themselves were admitted before Donte testified for the defense. The state must show a relevant basis prior to the start of the defense's case for the state to establish that the tools were relevant on this basis.

{¶30} The only other relevant purpose proffered by the state is that the tools tended to prove the Mason brothers intended to commit a theft or burglary. We agree with the state. The tools establish Donte's intent to commit a theft and tend to indicate a plan to commit a burglary. Therefore the evidence tends to establish both the trespass and mental elements for burglary. Furthermore, we are not persuaded that

9

this evidence was *unfairly* prejudicial to Mason. The only way this evidence is prejudicial to Mason is that it tends to suggest his guilt. This, however, is not a valid reason for exclusion under Evid.R. 403. *Tate*, at ¶49.

**{¶31}** The second assignment of error is without merit.

**{¶32}** In his third assignment, Mason alleges:

**{¶33}** "The trial court erred to the prejudice of the Defendant-Appellant when it returned a verdict of guilty against the manifest weight of the evidence."

**{¶34}** Within this assignment, Mason does not challenge that a burglary occurred; rather, his sole focus concerns whether Mason aided and abetted Donte's commission of burglary.

**{¶35}** A manifest weight challenge requires the reviewing court to play the role of a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (1997). A reviewing court should be cognizant of the fact that the jury is in the best position to assess the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus (1967). For an appellate court to overturn a conviction as against the manifest weight of the evidence, it must be found that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. Rep. 215, 485 N.E.2d 717 (1983).

{¶36} Here, the twins' testimony, combined with Carpenter's testimony, suggests that Mason was acting as a lookout for Donte as he went into the garage and stole the bike. Although Sekelsky's testimony suggests that Mason was just in the area while Donte stole the bike, the jury was free to weigh the credibility of the witnesses and believe whomever they found credible.

{¶37} The third assignment of error lacks merit.

{¶38} The judgment of the Lake County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, P.J.,

DIANE V. GRENDELL, J.,

concur.