[Cite as *Divincenzo v. Divincenzo*, 2022-Ohio-434.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

PAULA DIVINCENZO,

      Petitioner-Appellee,

- v -

STEVE DIVINCENZO,

      Respondent-Appellant.

**CASE NO. 2021-L-093**

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2019 DV 000038

# O P I N I O N

Decided: February 14, 2022
Judgment: Reversed; remanded

*Sandra A. Dray*, Sandra A. Dray Co., L.P.A., 1111 Mentor Avenue, Painesville, OH 44077 (For Petitioner-Appellee).

*Hans C. Keunzi*, Hans C. Kuenzi Co., LPA, Skylight Office Tower, 1660 West Second Street, Suite 660, Cleveland, OH 44113 (For Respondent-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1}    Appellant, Steve DiVincenzo ("Father"), appeals the judgment granting a Domestic Violence Civil Protection Order ("DVCPO") against him. We reverse and remand the matter for further proceedings consistent with this opinion.

{¶2}    The parties, who share parenting of one son born in 2014, divorced in 2016. In 2019, appellee, Paula DiVincenzo ("Mother"), filed a petition for a DVCPO seeking relief on her behalf and requesting the parties' child also be named as a protected person. In her petition, Mother alleged that Father poured hot scalding water on the child when in his care. The magistrate issued an ex parte order suspending Father's parenting time

with the child. Thereafter, the parties agreed to a modified interim order to provide Father with supervised parenting time. The full hearing on the petition for the DVCPO was delayed due to a criminal investigation of the child's injuries. In April 2020, Father was ultimately convicted of endangering the minor child, after which the trial court suspended parenting time in the present case, pending full hearing on the DVCPO petition. Thereafter, the trial court approved the parties' agreement to allow Father to have FaceTime contact with the child four times per week.

{¶3} The case proceeded to full hearing on the petition for DVCPO before the trial court judge. At the hearing, Mother testified that on the morning of February 7, 2019, Father sent her a text message that the child had not slept well and did not go to preschool. Father asked Mother through text message if she would like him to take the child to his office for the day, and she responded in text that she did not and told him to drop the child off to her. When Father arrived with the child, Mother's aunt retrieved the child from Father's car. After they entered the house, Father sent Mother a text message indicating that the child had a "boo boo" on his back, but he was fine. Mother then looked at the child and noticed his neck was red. Upon lifting the child's shirt, Mother saw scorch marks on his back. Mother sent a picture of the child's back to Father through text and asked what had happened. Father responded that he had iced the child's back, applied aloe vera lotion, and the main thing was that the child was comfortable, that his back did not hurt anymore, and they "just want to stay on that path." Mother contacted the child's pediatrician's office, which directed her to take the child to the emergency department. Thereafter she sent a text message to Father informing him they were going to the hospital, but Father did not respond nor appear at the hospital that day. At the emergency

2

room, the child informed the staff that he was burned in the shower. The child was admitted to the hospital for observation of the burn progression. The hospital's staff contacted children's services and the police department.

{¶4} Mother further testified that, upon discharge from the hospital, she was required to change the child's dressings, debride the wounds, and apply antibacterial ointment twice per day, which caused the child to cry in pain during the first three to four weeks of the six weeks of treatment. Mother maintained Father did not inquire as to the child's wellbeing during that time and that she had not received an explanation from Father as to how the burn occurred prior to the hearing. Mother acknowledged that the child loves Father, but she maintained that Father is unable to use sound judgment in caring for the child.

{¶5} Father testified that while the child was in his care on February 6, 2019, at approximately 4:00 or 5:00 p.m., the child notified Father he was hungry and asked for "spaghetti and cheese." Father boiled elbow pasta, drained the water from the pot, and added cheese. Father notified the child that the food was done, and, while Father was holding the pot in the hallway leading to the child's playroom, the child ran down the hall, and they collided. The contents of the pot spilled on the child's head, shoulders, and back. Father immediately took the child to the shower and ran cold water over him. After approximately 20 minutes, the child's pain had subsided to some extent, and Father applied a cold compress to the child's back and carried him to his bed. Father called a pharmacy, told the pharmacist what happened, and asked what was recommended. Father then directed the paternal grandfather to pick up the recommended ointments from the pharmacy as well as a bag of ice. Father iced the child's back and applied an ointment

3

at about 8:30 p.m. In the morning, the child relayed to Father that his "boo boo[ was] gone[.]" The child dressed, but Father could tell the burn "was still an issue," and Father determined that the child should not attend preschool that day. He then contacted Mother by text message and said that the child "got a boo-boo," and asked if she wanted him to stay with Father. Mother replied, "No, drop him off," which he did. Father maintained that he communicated with Mother in the manner he had because he was attempting to keep the situation calm.

{¶6} The trial court found that Father recklessly caused the child to suffer second degree burns on a significant portion of his body and failed to exercise due care by not obtaining appropriate medical treatment for the child after the accident. The court determined that the child was unable to protect himself from Father's "reckless conduct or poor judgment."

{¶7} The court granted a five-year DVCPO, naming Mother and the child as protected persons. The DVCPO provides Father with supervised parenting time with the child once per week for two hours.

{¶8} We first address Father's second assigned error to facilitate our review. Therein, he contends:

> The trial court erred in designating plaintiff-appellee as a protected party.

{¶9} "When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton v. Felton*, 79 Ohio St.3d 34, 679 N.E.2d 672 (1997), paragraph two of the syllabus, citing R.C. 3113.31(D).

{¶10} R.C. 3113.31(A)(1) provides:

4

"Domestic violence" means any of the following:

(a) The occurrence of one or more of the following acts against a family or household member:

(i) Attempting to cause or recklessly causing bodily injury;

(ii) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;

(iii) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

(iv) Committing a sexually oriented offense.

* * *

{¶11} We cannot discern from Mother's testimony any indication that she was in danger of domestic violence. Instead, her safety concerns appear entirely focused upon the child. Mother specifically asked the court for the DVCPO to provide for supervised parenting time for Father until the child was old enough to primarily care for himself. These parenting concerns do not create a risk of harm to Mother. In her brief, Mother responds that "[t]he Trial Court properly determined that Appellant's statements and his open animosity toward Appellee created a substantial risk to Appellee's health and safety, and designated her a protected person under the order." However, the trial court's findings do not expressly include any concerns regarding Mother's safety. Further, although Father testified to the acrimonious nature of the parties' interactions, and he believed Mother tended to react in a volatile manner to issues concerning the child, we cannot reasonably infer from the evidence presented any demonstration that Mother was in danger of domestic violence as defined under R.C. 3113.31(A)(1).

{¶12} Accordingly, Father's second assigned error has merit.

5

Case No. 2021-L-093

{¶13} In his first assigned error, Father argues:

> The trial court erred in barring the testimony of the guardian ad litem at full hearing.

{¶14} A trial court's ruling on the exclusion of evidence is reviewed for an abuse of discretion. (Citations omitted.) *Guliano v. Guliano*, 11th Dist. Trumbull No. 2010-T-0031, 2011-Ohio-6853, ¶ 18. "An 'abuse of discretion' is a term of art, connoting judgment exercised by a court, which does not comport with reason or the record." *State v. Mason*, 11th Dist. Lake No. 2014-L-058, 2015-Ohio-2895, ¶ 28, citing *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶ 30, citing *State v. Ferranto*, 112 Ohio St. 667, 676–678, 148 N.E. 362 (1925). "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]" Evid.R. 103(A). "'[A]s a general rule, a refusal to permit a proffer when direct examination evidence is excluded is error.'" *In re Byerly*, 11th Dist. Portage Nos. 2001-P-0158 & 2001-P-0159, 2004-Ohio-523, ¶ 24, quoting *Fireman's Fund Ins. Co. v. Mitchell-Peterson, Inc.*, 63 Ohio App.3d 319, 329, 578 N.E.2d 851 (12th Dist.1989).

{¶15} Here, at the full hearing, Father called as a witness the guardian ad litem appointed in the parties' divorce case with respect to then pending post-decree proceedings. Mother objected to the guardian's testimony. The trial court excluded the guardian as a witness. Thereafter Father's counsel requested to make a proffer as to the guardian's testimony. The trial court denied the proffer request.

{¶16} The parties acknowledge that the guardian ad litem was not appointed in the domestic violence case. Instead, she was appointed in the parties' post-divorce proceedings, wherein paternal grandmother had sought visitation with the child. The

6

court excluded the guardian's testimony in the present case because it determined that her testimony would not be relevant due to her different area of focus in the divorce case.

{¶17} We are mindful of the sensitive nature of information gained through a guardian's investigation and reports and that the guardian here was appointed in the divorce case, which pertained to other issues. However, without the proffer, we are unable to review the propriety of, or the prejudice resulting from, the trial's court's ruling in this matter. *See Byerly*, 2004-Ohio-523, at ¶ 24 ("Counsel needs to be free to adequately proffer excluded evidence in order to preserve the issue for appellate review.") (Citation omitted.). Moreover, neither party has directed this court to any rule containing a wholesale prohibition on the guardian testifying in proceedings separate from the proceeding in which she was appointed.

{¶18} To the extent that the trial court denied Father the opportunity to proffer the guardian's testimony, his first assigned error has merit.

{¶19} In Father's third through fifth assigned errors, he contends:

[3.] The trial court erred in imposing supervised parenting time between defendant-appellant and the minor child.

[4.] The trial court erred in limiting supervised parenting time between defendant-appellant and the minor child to two hours each week.

[5.] The trial court erred in extending the term of the protection order to its statutory maximum of five years.

{¶20} Father challenges the scope of the protective order as it pertains to his parenting time with the child. Given our disposition of Father's first assigned error, our review of Father's third through fifth assigned errors is premature, and we decline to address them.

7

{¶21} Accordingly, the judgment is reversed, and this matter is remanded to the trial court for proceedings consistent with this opinion.

CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.

8