[Cite as *Craig v. Amos*, 2026-Ohio-129.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| FREDDIE CRAIG, | Case No. 25-COA-019 |
| Plaintiff - Appellant | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Ashland County Court of Common Pleas, Case No. 23-CIV-093 |
| JOYCE AMOS, et al., | |
| | Judgment:   Affirmed |
| Defendant – Appellee | Date of Judgment Entry: January 14, 2026 |

**BEFORE:** Craig R. Baldwin; Robert G. Montgomery; Kevin W. Popham, Judges

**APPEARANCES:** W. JEFFREY MOORE, for Plaintiff-Appellant; PATRICK M. ROCHE and KURT D. ANDERSON, for Defendant-Appellee Joyce Amos and JOHN D. LATCHNEY and W. BRADFORD LONGBRAKE, for Defendant-Appellee Jerry Snay.

*Montgomery, J.*

{¶1}    Plaintiff-Appellant, Freddie Craig, appeals from the decision of the Ashland County Court of Common Pleas granting Defendant-Appellee's, Joyce Amos, Motion for Judgment on the Pleadings, and granting Defendant Appellee's, Police Chief Jerry Snay, Motion for Summary Judgment.  For the reasons below, we AFFIRM.

## STATEMENT OF THE CASE

{¶2}    This matter originally came before the Ashland County Court of Common Pleas upon Plaintiff-Appellant Freddie Craig's ("Appellant") Complaint against several

Defendants including Joyce Amos ("Amos") and Police Chief Jerry Snay ("Chief Snay"), the Mifflin Police Department, the Village of Mifflin, and Mifflin Township. On June 29, 2023, Appellant filed an amended complaint. It alleges that on or about January 6, 2021, Amos and Chief Snay, among others, caused the Appellant to be charged with Menacing by Stalking, a misdemeanor of the first degree with the possibility of jail time. Appellant alleges that Defendants did knowingly arrest, jail, and maliciously prosecute Appellant without sufficient probable cause or reasonable suspicion. On June 7, 2022, the Court dismissed the charges against Appellant. The specific claims against the Defendants include malicious prosecution, abuse of process, false light, invasion of privacy, intentional infliction of emotional distress, and civil conspiracy. On October 5, 2023, Appellant voluntarily dismissed without prejudice Mifflin Police Department.

{¶3} On November 30, 2023, Amos filed a Motion for Judgment on the Pleadings pursuant to Civ.R. 12(C). The Magistrate found that Appellant can prove no set of facts that would entitle him to relief because Amos enjoyed an absolute privilege from civil liability. Said privilege barred all claims against Amos as set forth in the Complaint. On February 9, 2024, Appellant filed objections to the magistrate's decision. On March 28, 2024, the trial court issued a judgment adopting the magistrate's decision in part, finding that the absolute privilege applied to bar Appellant's claim against Amos for malicious prosecution. The trial judge requested supplemental briefing as to whether the absolute privilege doctrine barred Appellant's remaining claims. On May 23, 2024, the trial court ruled that absolute privilege barred the remaining claims and dismissed the Amended Complaint against Amos in its entirety.

{¶4} On February 21, 2025, Chief Snay filed a Motion for Summary Judgment and a few days later filed the Affidavit of Prosecutor Michael Brown and Chief Snay's Affidavit. Later, Chief Snay's and Appellant's depositions were filed. Thereafter, on May 21, 2025, the magistrate issued a decision granting Chief Snay's Motion for summary judgment on all claims. Appellant filed objections to the magistrate's decision and on June 24, 2025, the trial court adopted the magistrate's decision. On July 24, 2025, Appellant filed a notice of appeal stating that he appeals "from the attached judgement entry issued on June 24, 2025 …." The Notice of Appeal attaches that order, which granted summary judgment to Snay. The Notice also attaches the trial court's order of May 23, 2024, dismissing "the remaining claims" of [Appellant] against Amos based on absolute privilege. The Notice of Appeal does not mention or attach the trial court's order of March 28, 2024, dismissing Appellant's claim of malicious prosecution against Amos.

{¶5} On September 15, 2025, Appellant's Brief was filed. Appellant has not asserted any error, nor presented any argument, regarding the trial court's granting of summary judgment to Snay regarding Appellant's claims for abuse of process, false light, invasion of privacy, intentional infliction of emotional distress, or conspiracy. Indeed, the sole claim discussed in Appellant's Brief regarding Defendant Snay is malicious prosecution.

{¶6} On August 24, 2025, Appellant voluntarily dismissed without prejudice Mifflin Township, and on December 4, 2025, Appellant voluntarily dismissed without prejudice the Village of Mifflin. The two remaining Defendants on appeal are (1) Amos and (2) Chief Snay. Amos served as a village council member for the Village of Mifflin

and Chief Snay was the Police Chief for the Village of Mifflin and was the investigating officer on the matter.[1]  Appellant timely filed an appeal.

## STATEMENT OF FACTS

{¶7}    Appellant has resided in the Village of Mifflin since 1999, was on the Board of Public Affairs from 2002 through 2021 and even served as a council member for the Village.  Appellant served as a council member with Amos in 2021. Appellant also owned a vacant piece of property with a garage on it next to the Amos residence.  The record reveals a long history of personal conflict between Amos and Appellant that seemed to escalate during the 2021-2022 time-period.  The conflict was allegedly due to a property line issue and the alley located near their respective properties.  During Chief Snay's deposition, he testified to a variety of Amos' complaints about Appellant's behavior towards her, some of which she captured on video.  Appellant acknowledged he had several encounters with Amos over the years, encounters which *she* characterized as harassing or threatening.

{¶8}    Throughout 2021 until January 20, 2022, Attorney Michael Brown served as the Village Solicitor and Prosecutor for the Village of Mifflin.  In late 2021, Chief Snay went to Prosecutor Brown regarding Amos' complaints.  Chief Snay met with Prosecutor Brown at his law office with another attorney present.  Chief Snay presented the known facts and circumstances, including the written reports of complaints from Amos and a few videos Amos retained.  Chief Snay took no position as to whether Appellant should or should not be prosecuted.

---

[1]Appellant's second assignment of error includes the Village of Mifflin. However, because Appellant dismissed the Village without prejudice on December 4, 2025, the Village is not a proper party to this appeal.

**{¶9}** Prosecutor Brown advised Chief Snay that, in the exercise of his independent professional legal judgment, and based upon the information and documentation presented, probable cause existed to charge Appellant with menacing by stalking. Thereafter, before Appellant was arrested, Prosecutor Brown directed Chief Snay to sign the charge. In an Affidavit, Prosecutor Brown averred that had he not believed there was probable cause to support a menacing by stalking charge against Appellant, he would not have directed Chief Snay to sign the charge. On January 5, 2022, Chief Snay and another officer went to Appellant's home, arrested him, and he stayed overnight in jail. On January 8, 2022, Appellant gave an interview to the Ashland Source and stated he had nothing to support a claim that Chief Snay sought publicity regarding his arrest. Appellant reiterated his statement in his deposition. *Freddie Craig Depo.*, pp. 28-29.

**{¶10}** After the arrest, the Ashland Municipal Court held a Pretrial Conference. Prosecutor Brown advised the Court that because Appellant was now a member of Village Council, Brown believed he had a conflict of interest and recused himself as prosecutor for the case. Attorney Brian Gernert was appointed as Special Prosecutor. Chief Snay did not have any substantive communications with Gernert regarding the case nor was Chief Snay present for either of the two pretrial conferences. A few months later, on June 7, 2022, Gernert dismissed the menacing by stalking charge against Appellant without prejudice, and charges were never re-filed. After these events, Appellant filed the instant matter.

## ASSIGNMENTS OF ERROR

**{¶11}** "I. THE TRIAL COURT ERRED WHEN IT GRANTED ABSOLUTE IMMUNITY TO DEFENDANT JOYCE AMOS AND DISMISSED HER FROM THE CASE."

**{¶12}** "II. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGEMENT FOR THE DEFENDANTS JERRY SNAY AND VILLAGE OF MIFFLIN."

## ANALYSIS

### *Standard of Review – Civ.R. 12(C)*

**{¶13}** In the first assignment of error, Appellant claims the trial court erred when it granted Amos' motion for judgment on the pleadings under Civ.R. 12(C) and in finding that Amos enjoyed absolute immunity from all civil liability. Civ.R. 12(C) provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Dismissal is appropriate where a court (1) construes the material allegations in the complaint as true, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party, and (2) finds beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996).

**{¶14}** Judgment on the pleadings may be granted where no material factual issue exists. *City of Columbus v. Sanders*, 2012-Ohio-1514, ¶ 11 (5th Dist.). However, it is axiomatic that a motion for judgment on the pleadings is restricted solely to the allegations contained in the pleadings. *Id.* Appellate review of a trial court's granting a Civ.R. 12(C) motion is de novo. *Id.*, at ¶ 13. When reviewing a matter de novo, this Court does not give deference to the trial court's decision. *Eagle v. Fred Martin Motor Co.*, 2004-Ohio-829, ¶ 11 (9th Dist.).

### *Defendant Amos and Absolute Privilege*

**{¶15}** As set forth, the trial court ruled that all claims against Amos failed because Amos' statements to law enforcement were protected by the absolute privilege doctrine,

resulting in total immunity from civil liability. Absolute privilege, also known as the "litigation privilege" is "a deeply rooted common-law rule that protects individuals" from civil liability for statements made during or in furtherance of litigation, whether civil or criminal litigation is involved. *State v. Brown*, 2022-Ohio-434, ¶ 20. The privilege precludes all civil liability against an individual for statements that are "material and relevant" to judicial proceedings. *Erie County Farmers' Ins. Co. v. Crecelius*, 122 Ohio St. 210, 212-213 (1930).

**{¶16}** Ohio law is well established that no civil liability attaches to individuals who provide statements that bear a "reasonable relationship" to judicial proceedings. *Surace v. Wuliger*, 25 Ohio St.3d 229 (1986). The *Surace* Court recognized the "absolute" nature of the immunity, acknowledging that "the result may be harsh in some instances" and that the target of an allegedly false statement "may possibly be harmed without legal recourse…." *Id*., at 234. The absolute nature of the privilege protects access to the judiciary, unrestrained by the threat of civil liability for initiating and/or participating in necessary judicial proceedings. It rests upon the idea "that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation." *Id.*, at 231.

**{¶17}** The Ohio Supreme Court later determined that a "judicial proceeding" includes the filing of reports and complaints that initiate criminal and other quasi-judicial investigations, reasoning that such initial reports are the essential starting point for formal judicial proceedings. *Hecht v. Levin*, 66 Ohio St.3d 458 (1993). In *Hecht*, the Court held that the filing of an ethics grievance with a local bar association was part of the "judicial

proceeding" because it culminated in the bar association's formal complaint to the Supreme Court. *Id.*, at 462. The Court stated:

> Accordingly, we hold that filing a grievance complaint with a local bar association is a "judicial proceeding" because such a filing initiates the purely judicial disciplinary procedure created by this court pursuant to Article IV of the Ohio Constitution. Because statements made in judicial proceedings enjoy an absolute privilege, we hold that a statement made in the course of an attorney disciplinary proceeding enjoys an absolute privilege against a civil action based thereon as long as the statement is relevant and material to the proceeding. The privilege exists irrespective of the relationship between complainant and attorney, and irrespective of whether the statement was made in bad faith.

> *Id*.

{¶18} Similarly, in *DiCorpo*, the Ohio Supreme Court held that reports by an individual of suspected criminal activity cannot form the basis for civil liability. *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 507 (1994). The facts of *DiCorpo* involved a defamation claim brought after an individual provided an affidavit to a county prosecutor reporting alleged criminal activity, thereby initiating the process of investigation and possible prosecution of an individual. The prosecutor did in fact file criminal charges against the individual. In finding that the informant enjoyed absolute immunity, as opposed to qualified, the Court held that:

> An affidavit, statement or other information provided to a prosecuting attorney, reporting the actual or possible commission of a crime, is part of a

judicial proceeding. The informant is entitled to an absolute privilege against civil liability for statements made which bear some reasonable relation to the activity reported.

\* \* \*

[I]t would be anomalous to recognize an absolute privilege against civil liability for statements made in a complaint filed with a local bar association, while denying the protections of that privilege to one who files an affidavit with the prosecutor's office reporting that a crime has been committed. Granting an absolute privilege under the circumstances of this case is merely a logical extension of this court's holding in *Hecht, supra.*

*DiCorpo*, at syllabus; 506.

{¶19} The *DiCorpo* Court explained that in the context of reporting criminal activity, the public policy surrounding absolute privilege is to "encourage the reporting of criminal activity by removing any threat of reprisal in the form of civil liability. This, in turn, will aid in the proper investigation of criminal activity and the prosecution of those responsible for the crime." *Id.*, at 505. In both *Hecht* and *DiCorpo*, the statements were expressly deemed to be part of the "judicial proceeding" because they *triggered* the initial investigations that ultimately led to judicial proceedings. The Supreme Court stated that "the absolute privilege" or "immunity" for statements made in a judicial proceeding extends to *every step* in the proceeding, from beginning to end. *DiCorpo*, quoting *Hecht*, supra (emphasis added).

{¶20} In *Becker*, this Court examined and applied the above principles of absolute immunity. *See Becker v. Becker*, 2015-Ohio-3992 (5th Dist.). The specific question was

whether statements made by an individual regarding the appropriate amount of bond in a criminal case were absolutely privileged. This Court stated:

> As the Supreme Court of Ohio detailed in DiCorpo at syllabus, absolute privilege embraces the philosophy that statements or affidavits that report 'the actual or possible commission of a crime' are part of a judicial proceeding and the informant is 'entitled to an absolute privilege against civil liability for statements made which bear some reasonable relation to the activity reported . . . .'
>
> *Becker*, at ¶¶ 21-22, quoting *DiCorpo,* at syllabus.

**{¶21}** The Court further noted courts have extended absolute privilege to the reporting of a crime that turned out to be a misidentification of the accused, as well as reporting of a possible crime or felony even if the information turns out to be erroneous. *Becker,* ¶ 22; *Lee v. Upper Arlington*, 2003-Ohio-7157 (10th Dist.). As such, the *Becker* court concluded that the statements related to setting of bond is part and parcel of a criminal prosecution and protected by absolute privilege. *Id.*, at ¶ 24. "Not only does bond assure the presence of an accused at trial, but it is also related to and part of the trial court's decision as to the possibility of the defendant committing other criminal acts while on bond. We therefore conclude the statements made sub judice were part of a judicial proceeding in consideration of bond for appellant and were reasonably related to the activity reported i.e., threats." *Id.*; *see also Haller v. Borror Corp.*, 50 Ohio St.3d 10 (1990); *Fair v. Litel Commun.*, 1998 Ohio App. LEXIS 930 (10th Dist.).

**{¶22}** Appellant argues that Amos' report to police should not be absolutely privileged and that it is a question for the jury to decide whether the privilege is abrogated.

Appellant cites two cases from the Eighth District as support for his position. *See Thomas v. Murray*, 2021-Ohio-206 (8th Dist.) and *Scott v. Peterson*, 2003-Ohio-3353 (8th Dist.). In both cases, the Court held the immunity in question was qualified rather than absolute, such that the immunity can be abrogated by malicious intent or bad faith conduct. In *Scott*, the Eighth District analyzed a malicious prosecution claim and noted that *DiCorpo* involved information given to a prosecutor, whereas *Scott* involved a complaint provided to law enforcement. The Eighth District distinguished *DiCorpo* based on that factual difference and concluded that initial police work is "investigatory in nature rather than a judicial proceeding . . . ." *Scott, supra*. Here, because there is a long history of personal conflict between Ms. Amos and Appellant, Appellant claims it is possible that Ms. Amos acted with malicious purpose or in bad faith such that immunity does not apply. We disagree with Appellant.

{¶23} As aptly noted by the trial court, whether the investigation is initiated through law enforcement or through the county prosecutor, the underlying public policy of encouraging the reporting of criminal activity by removing any threat of reprisal in the form of civil liability remains the same. In *Dicorpo, supra,* there was no ongoing investigation when the informant submitted the affidavit to the prosecutor and the Court specifically noted the affidavit may set the criminal process in motion. *DiCorpo*, at p. 506. Nonetheless, the Court steadfastly applied absolute immunity to further the public policy of encouraging individuals to report criminal activity without any threat of civil liability. *Id.*; *Becker*, supra. Based on well-established public policy and Ohio precedent, we conclude that Amos is entitled to absolute immunity from civil liability for any statements she made

to law enforcement that set the process in motion resulting in Appellant's arrest. Appellant's first assignment of error is overruled.

### *Summary Judgment – Defendant Snay*

### *Malicious Prosecution Claim*

**{¶24}** Appellant's second assignment of error argues the trial court erred in granting summary judgment in favor of Chief Snay and the Village of Mifflin.[2] Summary judgment proceedings present the appellate court with the unique opportunity to review the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36 (1987). Accordingly, this Court reviews summary judgment decisions de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

**{¶25}** Civ.R. 56(C) states in pertinent part: "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

**{¶26}** Thus, summary judgment may be granted only after the trial court determines that: 1) no genuine issues as to any material fact remain to be litigated; 2) the

---

[2] Regarding the Village, it was voluntarily dismissed from this matter without prejudice and is not a proper party to this appeal.

moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶27} Summary judgment consists of a burden-shifting framework. *Dresher v. Burt,* 75 Ohio St.3d 280, 294 (1996). The movant bears the initial burden of demonstrating the absence of genuine issues of material fact concerning the essential elements of the nonmoving party's case. Once this burden is met, the burden shifts to the nonmoving party. *Id.* According to Civ.R. 56(E), the nonmoving party may not rest on mere allegations or denials in their pleadings but must set forth specific facts showing a genuine issue for trial. *Id.*, at 293. A fact is "material" only if its resolution will affect the outcome of the lawsuit. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–52 (1986).

{¶28} As stated above, Appellant does not present any arguments regarding Appellant's claims for abuse of process, false light, invasion of privacy, intentional infliction of emotional distress, or conspiracy. Pursuant to App.R. 16(A), briefs are to contain a separate discussion of each error alleged as well as argument and authority supporting the party's position.[3] *Kremer v. Cox* (1996), 114 Ohio App.3d 41, 60 (9th Dist.). It is simply not this Court's obligation to develop legal arguments that the appellant

---

[3]App.R. 16(A) Brief of the appellant. The appellant shall include in its brief, under the headings and in the order indicated, all of the following: * * * (7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.

could have raised. *Id.* (noting that failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal); *State v. Brown*, 2015-Ohio-668, ¶ 18 (overruling an assignment of error because Appellant did not develop his claim of ineffective assistance of counsel and the Court would "not construct such on his behalf.") Rather, this Court addresses the arguments properly presented by the parties. *In re A.C.*, 2006-Ohio-6155, ¶ 20 (9th Dist.).

{¶29} The sole claim discussed and presented in Appellant's Brief against Chief Snay, that we must review de novo, is malicious prosecution. "The elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Mann v.* Genoa *Twp.,* 2002-Ohio-727, p. 10 (5th Dist.). Appellant alleges that Chief Snay initiated the prosecution and was the reason he was charged with menacing by stalking. We disagree.

{¶30} There is no dispute that before Appellant was arrested and charged, Chief Snay consulted with Prosecutor Brown. "Prosecutors have wide discretion in deciding whether to prosecute a particular matter." *State ex rel. Capron v. Dattilio*, 2016-Ohio-1504, ¶ 4, *citing State ex rel. Master v. Cleveland,* 75 Ohio St.3d 23, 27 (1996) ("the decision whether to prosecute is discretionary, and not generally subject to judicial review.") A prosecutor's duty is to exercise his or her discretion in determining, on a case-by-case basis, whether to prosecute an individual for alleged criminal offenses. *Pengov v. White*, 146 Ohio App.3d 402, 406 (9th Dist. 2001). Once a prosecutor has determined, in the exercise of that discretion, that an individual should or should not be prosecuted,

there is simply no continuing "duty" to prosecute or revisit the prior determination. *State v. White*, 2007-Ohio-4244, ¶ 16 (5th Dist.).

**{¶31}** Here, Chief Snay presented Prosecutor Brown with the complaints by Amos, including written reports and videos she retained. Chief Snay took no position either way regarding whether Appellant should be charged and/or prosecuted. Ohio law is clear that "if an informer merely provides a statement of his belief of criminal activity and leaves the decision to prosecute entirely to the uncontrolled discretion of the prosecutor * * * the informer is not regarded as having instituted the criminal proceedings." *Robbins v. Fry*, 72 Ohio App.3d 360, 363 (3d Dist. 1991), citing *Archer v. Cachat*, 165 Ohio St. 286 (1956) ("Where a private person gives to a prosecuting officer information which he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this section even though the information proves to be false and his belief therein was one which a reasonable man would not entertain.") This rule is known as the "Archer rule." *See Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002); *Epling v. Pacific Intermountain Express Co.*, 55 Ohio App.2d 59, 62 (9th Dist.) (finding that an individual who provides a prosecuting officer with information which he believes true is not the cause of the indictment where the officer exercises his uncontrolled discretion to prosecute).

**{¶32}** Here, the unrefuted evidence is that Prosecutor Brown made the decision to charge Appellant, not Chief Snay. There is similarly no evidence to suggest that Chief Snay knowingly or recklessly made false statements or significant omissions to Prosecutor Brown before he made the decision to charge and prosecute Appellant. "A

prosecutor's independent charging decision typically breaks the causal chain for malicious-prosecution purposes." *Novak v. City of Parma, Ohio*, 33 F.4th 296, 307 (6th Cir. 2022). Prosecutor Brown's exercise of prosecutorial discretion and independent professional legal judgment summarily defeats Appellant's malicious prosecution claim against Chief Snay.  As such, the trial court properly granted Chief Snay's motion for summary judgment.

{¶33} Moreover, even assuming we were to disregard the obvious flaw in the presentation of Appellant's remaining claims against Chief Snay, such claims are without merit.  A review of the record and the trial court's decision reveals that Appellant has no facts to support his claims, and the trial court properly granted summary judgment to Chief Snay as to all claims against him.

## CONCLUSION

{¶34} For the reasons set forth in this Opinion, the judgment of the Ashland County Court of Common Pleas is affirmed in all respects. Appellant's first and second assignments of error are overruled.

{¶35} Costs to Appellant.

By: Montgomery, J.

Baldwin, P.J. and

Popham, J. concur.

_____
HON. ROBERT G. MONTGOMERY


_____
HON. CRAIG R. BALDWIN


_____
HON. KEVIN W. POPHAM

RGM/clw